UNITED STATES DISTRICT COURT
April 14, 2011SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EVILLE VARGAS,                                    :

                Petitioner,       :        10 Civ. 7604 (DAB) (GWG)

    -against-                                        :        REPORT AND
                                                                                 RECOMMENDATION
JAMES J. WALSH,                                   :

                Respondent.       :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Eville Vargas, proceeding pro se, brings this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Vargas was convicted by a jury of two counts of Robbery in the Second Degree, N.Y. Penal Law § 160.10(2)(b). See Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, filed Oct. 5, 2010 (Docket # 2) ("Pet.") ¶ 5; S. Tr. 3.[1] Vargas was sentenced to two concurrent prison terms of 25 years to life. See Pet. ¶ 4; S. Tr. 6. Vargas argues that his petition should be granted on the ground that the trial court improperly admitted evidence of a crime for which he was not charged. See Pet. ¶ 13. For the reasons stated below, the petition should be denied.

I.      BACKGROUND

    A.    Facts

      On June 27, 2005, Vargas entered a Domino's Pizza store at 945 Park Avenue in Manhattan and asked the general manager, Mohammed Ahmed, about the price of pizza while another man stood outside. (Ahmed: Tr. 4-8, 12). After Ahmed told Vargas the price of the pizza, Vargas pointed a gun at Ahmed and told him to go into the back of the store. (Ahmed: Tr.

---

[1] "Tr." refers to the transcript of the trial and "S. Tr." refers to the transcript of the sentencing. Both are contained in a single bound volume filed on January 7, 2011 (Docket # 6).

13).  At the back of the store, Vargas encountered two other employees and instructed them "not to scream."  (Ahmed: Tr. 17).  Vargas then ordered the employees to give him their money and the two employees gave Vargas approximately two to three hundred dollars in cash.  (Ahmed: Tr. 17-18).  Vargas ordered the two employees to sit down on the floor and he escorted Ahmed to the front of the store where he demanded that Ahmed open the cash register and give him the money inside.  (Ahmed: Tr. 18-19).  Ahmed opened the register and gave Vargas approximately six hundred dollars.  (Ahmed: Tr. 19).  Vargas then told Ahmed to move to the back of the store without looking behind him.  (Ahmed: Tr. 20).  After Vargas left, one of the store employees called 911.  (Ahmed: Tr. 21-22).  When the police arrived, Ahmed rode with them in a police car looking for the men who had robbed the store, but did not find them.  (Ahmed: Tr. 22).

On July 8, 2005, Gregorio Burgos was working at a Blockbuster video store at 780 Broadway in Manhattan.  (Burgos: Tr. 62-66).  At approximately 11:00 p.m., Vargas and another man entered the store.  (Burgos: Tr. 66, 71-73).  Vargas approached Burgos and asked how he could "get a Blockbuster Video card."  (Burgos: Tr. 71).  Burgos explained the application process and gave Vargas the Blockbuster application.  (Burgos: Tr. 71).  Burgos "turned around to do something else and when [he] turned back" he saw that one of the other employees looked "[s]hocked."  (Burgos: Tr. 73-74).  He then saw Vargas holding a gun by his leg.  (Burgos: Tr. 74).  Vargas said "give me the money, just give me the money" a couple of times.  (Burgos: Tr. 76).  Burgos opened the register and gave Vargas about a hundred dollars.  (Burgos: Tr. 76).  Vargas then told Burgos and the other employee to walk to back of the store.  (Burgos: Tr. 77).  Burgos and the employee walked back "about 15 feet" when they heard the door slam.  (Burgos: Tr. 77-78).  Burgos turned around and saw Vargas running south on Broadway.  (Burgos: Tr. 77).  Burgos instructed another employee to call the police.  (Burgos: Tr. 79).  When the police

arrived, Burgos accompanied them in a police car to look for the men who had robbed the store. (Burgos: Tr. 80). They drove around for approximately fifteen to twenty minutes but did not see the two men. (Burgos: Tr. 80).

On July 13, 2005, Officer Miguel Seda arrested Vargas at a Payless store at 725 Grand Street in Brooklyn. (Seda: Tr. 121, 123). Seda recovered what appeared to be a black and silver gun from Vargas's waistband. (Seda: Tr. 124, 128-30). Seda later learned the gun was an "air pistol." (Seda: Tr. 124). The air pistol was admitted into evidence. (Tr. 126-27). At the time of its admission, the court instructed the jury: "You are not to speculate about what happened with this event in Brooklyn, why there was an arrest, everything related to that aspect of what happened in Brooklyn is totally unrelated to this case. And do not consider that event or the arrest there as in any way propensity to committing the crimes charged here." (Tr. 127).

Detective Don DeRienzo, who had been assigned to investigate the robberies at the Domino's and Blockbuster stores, was informed on July 13, 2005, that Vargas had been apprehended. (DeRienzo: Tr. 166, 168, 170). On July 14, 2005, DeRienzo arranged a lineup and Ahmed identified Vargas as the man who had robbed the Domino's Pizza store on June 27, 2005. (Ahmed: Tr. 23-24; DeRienzo: Tr. 172-77). On August 25, 2005, Burgos viewed a lineup that included Vargas and identified him as one of the men who had robbed the Blockbuster store on July 8, 2005. (Burgos: Tr. 82-83; DeRienzo: Tr. 177-81). At trial, Burgos also identified Vargas from video surveillance photographs taken at the Blockbuster store. (Burgos: Tr. 84-90). Both Ahmed and Burgos testified that the gun recovered from Vargas at the Payless store resembled the gun that Vargas had used during the robberies. (Ahmed: Tr. 50-51; Burgos: Tr. 75).

Following the testimony regarding Vargas's arrest at the Payless store, Vargas's counsel

3

moved for a mistrial on the ground that this testimony constituted improper propensity evidence. (Tr. 159-62). The court denied the motion, concluding that the jury would not have any reason to believe that Vargas had been in the Payless store to commit a robbery. (Tr. 163-64). Vargas did not present any witnesses.

The jury found Vargas guilty of two counts of second-degree robbery (Tr. 267), and on August 2, 2007, the court sentenced Vargas as a persistent violent felony offender to two concurrent prison terms of 25 years to life on each count (S. Tr. 3, 6).

    B.    Procedural History

        1.    Appeals

Vargas appealed his conviction to the Appellate Division, First Department, arguing that the evidence regarding his arrest in the Payless store suggested to the jury that he had committed a robbery at this store, was unduly prejudicial, and denied him due process and a fair trial. See Brief for Defendant-Appellant, dated Sept. 2008 (annexed as Ex. A to Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Jan. 7, 2011 (Docket # 8) ("Decl. in Opp.")) ("Def.-App. Brief"). The Appellate Division affirmed the conviction on March 12, 2009, holding that the trial court "properly exercised its discretion in admitting evidence that, following an unspecified 911 call, [Vargas] was arrested at a store in Brooklyn with an air pistol in his waistband that resembled the weapon used in the two store robberies of which [he] was convicted." People v. Vargas, 60 A.D.3d 480, 480 (1st Dep't 2009). On June 19, 2009, the New York Court of Appeals denied Vargas's application for leave to appeal. See Certificate Denying Leave, dated June 19, 2009 (annexed as Ex. F to Decl. in Opp.).

        2.    The Instant Petition

Vargas signed his petition for a writ of habeas corpus on September 16, 2010, and

indicated that he had delivered it to prison authorities for mailing that day.  See Pet. at 6.  The petition seeks relief on the ground that the trial court improperly admitted evidence of an uncharged crime.  See id. ¶ 13.  Respondent filed papers opposing the petition.  See Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Jan. 7, 2011 (Docket # 7); Decl. in Opp.

II.  STANDARD FOR PETITIONS BROUGHT PURSUANT TO 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and cites no relevant federal case law.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (citation omitted); see also id. at 784 (section 2254(d)

5

deference applies even "[w]here a state court's decision is unaccompanied by an explanation"). Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable" – a standard that is met only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786; accord id. ("even a strong case for relief does not mean the state court's contrary conclusion was unreasonable"). In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87

The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question." Brisco v. Ercole, 565 F.3d 80,

6

89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law."  Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief."  Id. at 106-07 (citation omitted).  Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer" to the question presented in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.  See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citations omitted).

III.     DISCUSSION

    A.     Admission of the Uncharged Crimes Evidence

Vargas claims, as he did on appeal, that the evidence he was arrested at a Payless store in Brooklyn was improperly admitted on the grounds that it suggested to the jury that he had

7

committed a robbery at this store, was unduly prejudicial, and denied him due process and a fair trial.  See Pet. ¶ 13, Def.-App. Brief at 12-20.  The Appellate Division held that the trial court did not err in allowing the prosecution to present this evidence.  Vargas, 60 A.D.3d at 480.  The court noted that the "limited details [of Vargas's arrest] were relevant to complete the narrative by explaining how the air pistol came into the People's possession and how [Vargas] came to be placed in a lineup and arrested for the charged crimes."  Id.

Because a habeas petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), "'federal habeas corpus relief does not lie for errors of state law,'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  Even where there has been an erroneous ruling under state law, "introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"  Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)), cert. denied, 525 U.S. 840 (1998).  And, even where unfairly prejudicial evidence has been introduced, habeas relief is not available unless the evidence was "sufficiently material to provide a basis for conviction."  Id. at 125 (citations and internal quotation marks omitted).

As has been repeatedly recognized in case law, "the Supreme Court has never taken an unambiguous position on whether the admission of prior bad acts evidence in state court – even when introduced to show criminal propensity – violates due process."  Lugo v. Furness, 2011 WL 1303365, at *6 (E.D.N.Y. Mar. 31, 2011) (citations omitted).  Indeed, in Estelle, the Supreme Court explicitly stated that it was expressing "no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

propensity to commit a charged crime." Estelle, 502 U.S. at 75 n.5. "Because the United States Supreme Court has declined to determine whether use of uncharged crimes would violate due process," a state court's refusal to overturn a conviction on this ground "cannot be considered an unreasonable application of clearly established Supreme Court precedent." Roman v. Napoli, 2010 WL 4922627, at *4 (W.D.N.Y. Dec. 2, 2010) (citations omitted). Courts have routinely held that federal habeas corpus relief is unavailable to challenge the admission of propensity or "prior bad acts" evidence because there is no clearly established Supreme Court law barring the practice. See, e.g., Gomez v. Lempke, 2011 WL 197425, at *6 (W.D.N.Y. Jan. 20, 2011); Wynder v. Smith, 2011 WL 70556, at *11 (S.D.N.Y. Jan. 10, 2011); Roman, 2010 WL 4922627, at *4; Mercedes v. McGuire, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010); Romero v. Rock, 2010 WL 908844, at *13 (S.D.N.Y. Feb. 2, 2010); Tingling v. Donelli, 2008 WL 4724567, at *9 (S.D.N.Y. Oct. 24, 2008); Jones v. Conway, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006). For this reason alone, the petition fails.

In any event, there was nothing at all unfair about the admission of the evidence in Vargas's case. As an initial matter, we note that admission of this evidence was consistent with New York law, which allows prior bad acts evidence "to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; [and] (5) the identity of the person charged with the commission of the crime on trial." People v. Molineux, 168 N.Y. 264, 293 (1901) (citations omitted). Such evidence is also admissible if it is necessary to provide "'background material'" or to "'complete the narrative of the episode.'" People v. Till, 87 N.Y.2d 835, 837 (1995) (citing People v. Gines, 36 N.Y.2d 932, 932-33 (1975)) (additional citations omitted); see People v. Wilson, 279 A.D.2d 381, 382 (1st Dep't

9

2001); People v. Then, 248 A.D.2d 159, 159 (1st Dep't 1998); People v. Henry, 166 A.D.2d 720, 720 (2d Dep't 1990). Here, the evidence explained how Vargas came to be placed into a line-up and, more importantly, how the air pistol was recovered from him. This evidence thus helped to link Vargas to the crimes charged. Additionally, as the Appellate Division noted, the trial court's contemporaneous "limiting instruction minimized any prejudicial effect" of this testimony. Vargas, 60 A.D.3d at 480. Accordingly, not only was the admission of the evidence consistent with state law, there was nothing fundamentally "unfair" in allowing the jury to consider this evidence in its assessment of the case against Vargas.

IV.     CONCLUSION

For the foregoing reasons, Vargas's petition for a writ of habeas corpus should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah A. Batts, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Batts. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: April 14, 2011
       New York, New York

                                                                GABRIEL W. GORENSTEIN
                                                                United States Magistrate Judge

Copies to:

Eville Vargas
07-A-6064
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733

Ashlynn Dannelly
Priscilla Steward
Assistant Attorneys General
New York State Attorney General's Office
120 Broadway
New York, NY 10271

Dated: April 14, 2011
      New York, New York

                                            GABRIEL W. GORENSTEIN
                                            United States Magistrate Judge

Copies to:

Eville Vargas
07-A-6064
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733

Ashlynn Dannelly
Priscilla Steward
Assistant Attorneys General
New York State Attorney General's Office
120 Broadway
New York, NY 10271

11